1 | Adrienne Publicover, Esq. (Bar No. 161432)
2 | Russell Birner, Esq. (Bar No. 181835)
Sherida Stroble, Esq. (Bar No. 202717)
3 | **WILSON, ELSER, MOSKOWITZ,**
    **EDELMAN & DICKER LLP**
4 | 555 South Flower Street, Suite 2900
Los Angeles, California 90071
5 | Telephone: (213) 443-5100
Facsimile: (213) 443-5101
6
Attorneys for Defendant
7 | MITCHELL, SILBERBERG & KNUPP LLP
LONG TERM DISABILITY COVERAGE FOR
8 | ALL EMPLOYEES, an ERISA Plan

```
                        FILED
              CLERK, U.S. DISTRICT COURT

                   FEB - 3 2009

           CENTRAL DISTRICT OF CALIFORNIA
           BY                      DEPUTY
```

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ERMOVICK, | Case No.: CV05-6018-R-VBKx |
|     Plaintiff, | **DEFENDANT MITCHELL, SILBERBERG & KNUPP LLP LONG TERM DISABILITY COVERAGE FOR ALL EMPLOYEES, an ERISA PLAN'S [PROPOSED] FINDINGS OF FACTS & CONCLUSIONS OF LAW** |
| v. | |
| MITCHELL, SILBERBERG & KNUPP LLP LONG TERM DISABILITY COVERAGE FOR ALL EMPLOYEES, an ERISA Plan; DOES 1 through 10, inclusive | |
|     Defendants. | Trial Date: October 21, 2008<br>Time: 9:00 a.m.<br>Dept.: 8 |

COMES NOW Defendant MITCHELL, SILBERBERG & KNUPP LLP LONG TERM DISABILITY COVERAGE FOR ALL EMPLOYEES, an ERISA PLAN ("Defendant") and submits the following Proposed Findings of Fact and Conclusions of Law in this matter, which was tried to the Court on October 21, 2008, following remand from the Ninth Circuit Court of Appeals.

# FINDINGS OF FACT

1.    Plaintiff James Ermovick's ("Plaintiff") claim for long-term disability ("LTD") benefits was submitted under group insurance policy no. DG-91422-CA  (the "Policy") issued by The Prudential Insurance Company of America ("Prudential") to Plaintiff's employer, Mitchell, Silberberg & Knupp, LLP ("Mitchell Silberberg").  [PRU-ERMO-109-110; PRU-CD-ERMO-0001-0046][1]

2.    The Policy provides for employee welfare plan benefits under the provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*  [CD-ERMO 001-046]

3.    Plan benefits are provided by Prudential.  [PRU-CD-ERMO-0001-0046]

4.    The Policy states, with respect to the LTD coverage offered to staff personnel employees (such as Plaintiff):

> You are disabled when Prudential determines that:
> - you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury;
> - you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury; and
> - you are under the regular care of a doctor.
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

CD-ERMO 0010 (emphasis omitted).

[1] The Administrative Record in this matter consists of two pieces: (1) "PRU-ERMO-0001 through PRU-ERMO-0224 and PRU-ERMO-0228 through PRU-ERMO-0679" and (2) "PRU-CD-ERMO-0001 through PRU-CD-ERMO-0047."  The former is what is traditionally thought of as the claim file.  The latter is the insurance policy at issue.  For the sake of brevity and clarity, these will be referred to as "ERMO" and "CD-ERMO," with the leading zero omitted, *e.g.*, ERMO 100 or CD-ERMO 047.

5.    Plaintiff submitted a claim for LTD benefits to Prudential in March 2001, based on a purported psychological disability which allegedly arose in December 2000.  [ERMO 109-110 and 179-180]

6.    On or about April 2, 2001, Prudential received a disability claim from Plaintiff.  [ERMO 130-133]

7.    Plaintiff was a word processing manager whose duties involved lifting and carrying a maximum of five pounds at a frequency of ten percent daily.  [ERMO-003]

8.    In the Employee's Statement portion of his claim submission, dated March 26, 2001, Plaintiff wrote "at work on 12/19/00 - sexual harassment" as the reason he stopped working.  [ERMO 109-110]

9.    The Employer Statement portion of Plaintiff's claim submission, dated April 2, 2001, indicated that Plaintiff had last worked on January 5, 2001. [ERMO 133]

10.    The Attending Physician's Statement executed in March 2001 by psychologist Sean Pakdaman, Ph.D., Q.M.E., listed anxiety, depression and irritability "due to being exposed to sexual harassment comments" as the illness and/or symptoms that caused Plaintiff to stop working.  [ERMO 131-132]

11.    Plaintiff sought psychological treatment from Dr. Pakdaman who referred him to psychiatrist Fereidoon Kharabi, M.D., for a psychiatric evaluation and consultation.  [ERMO 115-120]

12.    In his March 10, 2001 evaluation, Dr. Kharabi concurred with Dr. Pakdaman regarding Plaintiff's depressive state.  Dr. Kharabi opined that Plaintiff was "in need of continuation of psychological treatment under the care of a psychologist, Dr. Pakdaman" with follow-up outpatient treatment by Dr. Kharabi.  [ERMO 115-120]

13.    Dr. Kharabi noted that Plaintiff "complains of having problems in concentration.  However, his memory is grossly intact."  [ERMO 117]

14. On March 29, 2001, Plaintiff was denied Workers' Compensation benefits based on a mental status examination ("MSE") performed by psychiatrist William J. Sullivan, M.D, Ph.D., on February 8, 2001. [ERMO 140 and 146-175] Dr. Sullivan noted that Plaintiff "appeared to be in excellent physical health [and that h]e had no complaints of a physical nature during the course of the interview." [ERMO 149] Dr. Sullivan also noted that Plaintiff "is not clinically depressed or anxious. In fact, it does not appear that the claimant is distressed to any significant degree, but rather presents in a histrionic and dramatic fashion." [ERMO 157]

15. A May 18, 2001 Prudential "Summary, Objective, Analysis & Progress Note" ("SOAP Note") indicated that a Worker's Compensation psychiatric evaluation was performed by psychiatrist William J. Sullivan, M.D., Ph.D., on February 8, 2001. [ERMO 062] Dr. Sullivan's Medical-Legal Psychiatric Evaluation of that date stated that "[o]ther than the dramatic histrionic presentation, there is nothing inappropriate about Mr. Ermovick's appearance, his mannerisms, his actions, or his verbalizations." [ERMO 157] The May 18, 2001 SOAP Note also stated that the "MMPI suggested possible malingering due to evidence of questionable validity." [ERMO 062] See also, Sullivan-Glaser Forensic Psychiatry report of February 8, 2001. [ERMO 146-174]

16. On or about May 22, 2001, Prudential completed its review of Plaintiff's psychological claim and denied it because "[b]ased on the information in the file, there is no evidence of mental or cognitive impairment that would prevent you from performing the duties of your occupation. While you may have experienced issues on the job, this is an employment related issue and not a disability issue." [ERMO 636-637]

17. In July 2001, Plaintiff began to receive Social Security Disability Benefits. [ERMO 072]

4

18.   Plaintiff appealed the denial of his claim on October 15, 2001.  In his appeal, Plaintiff indicated that he had a second claim for LTD benefits, which he described as a neck and back "industrial physical injury," which he alleged had been sustained on the job.  [ERMO 633-635]

19.   Prudential reviewed the materials provided by Plaintiff with his October 15, 2001 appeal, including an April 26, 2001 MRI, and noted that the MRI identified a "disc bulge towards the spinal cord with impingement on the C5 nerve root bilaterally [and] disc bulges . . . identified at multiple other cervical and lumbar levels without other nerve root involvement."  [ERMO 065] (The MRI report is located at ERMO 664-665.)

20.   Prudential also considered a June 19, 2001 comprehensive orthopedic consultation report by Gil Tepper, M.D., F.A.C.S.  Dr. Tepper's report stated that thoracic views "reveal diffuse degenerative changes, multiple levels, but no loss of alignment."  Dr. Tepper's diagnoses included "industrially related exacerbation on previously existent degenerative disease at C3-4 and C4-5 . . . [and i]ndustrially related exacerbation of preexistent degenerative changes in the lumbosacral spine, L2-3 and L3-4, with mechanical back syndrome."  Dr. Tepper further stated that Plaintiff's "cervical spine is a significant problem with cord compression and symptoms that are consistent with cord compression and has been recalcitrant to improvement with epidural injections alone , . . ." [ERMO 655-663 (quotations found at ERMO 659-661)]

21.   Dr. Tepper thereafter concluded that Plaintiff was a surgical candidate for an anterior cervical decompression and fusion at the level of C3-4 and C4-5.  Dr. Tepper noted that Plaintiff's lumbosacral spine "has some mechanical derangement with degeneration, collapse and facet arthrosis." [ERMO 655-663 (quotation found at ERMO 661)]

22.   Plaintiff failed to report any of his cervical/orthopedic problems to Dr. Sullivan during his February 8, 2001 comprehensive medical-legal

psychiatric evaluation. [ERMO 146-174]  At page 5, the report states that "[t]he claimant reported low-level problems with arthritis, but takes natural herbs, which 'does[sic] wonders' . . . **He disclaimed long-term medical conditions.**" [ERMO 150 (emphasis added)]  Further, at page 10, the report states that "[t]he claimant had arthroscopic surgery to his left knee in 1994.  He has had some cosmetic plastic surgery and currently is watching for skin cancer keratosis. Otherwise, Mr. Ermovick states that he has not had any serious injuries or serious illnesses.  He has never had any major surgery, and **his general health has been excellent.**" [ERMO 155 (emphasis added)]]

23.    Plaintiff's treating, consulting and Workers' Compensation doctors were of the opinion that Plaintiff would be able to return to work following the minimally invasive surgery they recommended, i.e., discogram, microdecompressive lumbar diskectomy and laser thermodiskoplasty. [ERMO 332, 335, 661 and 652]

24.    On February 5, 2002, Prudential informed Plaintiff that it had reconsidered its prior decision denying his claim for benefits which had been based on psychiatric symptoms and began paying Plaintiff's benefits under the "regular occupation" definition of disability for the orthopedic symptoms Plaintiff raised for the first time on his appeal of Prudential's denial of his psychiatric claim. [ERMO 007-008]  Plaintiff's claim was reinstated, he was paid LTD benefits retroactively (back to the date he left work) until the time his benefits were terminated in November 2003. [ERMO 021-023, ERMO-066, ERMO 071-072, ERMO ]

25.    John C. Chiu, M.D., a neurological surgeon, performed a minimally-invasive "discogram and microdecompressive lumbar diskectomy of Plaintiff's L2, L3 and L4 under magnification with laser thermodiskoplasty" on May 15, 2002. [ERMO 333]

26.    On May 29, 2002, Plaintiff underwent a cervical discogram and microdecompressive endoscopic diskectomy of C3, C4 and C6. [ERMO 334]

27.    On June 4, 2002, Plaintiff had trigger point injections to his sacroiliac joint and his bilateral trapezius. [ERMO 334]  At that time, Dr. Chiu indicated that Plaintiff could return to work on August 29, 2002.  [ERMO 334]

28.    In his July 15, 2002 Workers' Compensation Agreed Medical Examination Report [ERMO 315-343], orthopedist Bernard Cooperman, M.D., concluded that Plaintiff was suffering from "an inflammatory arthritic process that has arisen spontaneously and is naturally progressive and will, most likely, continue to progress and involve more joints than are currently involved."  He further opined that Plaintiff's condition was a "variant" of two "classical athridities" (rheumatoid and/or ankylosing spondylitis) and that this "process is entirely independent of this man's employment."  [ERMO 340]

29.    Dr. Cooperman noted that Plaintiff had undergone "two minimally invasive micro diskectomy procedures with very limited benefit."  He did not recommend further treatments of that kind because they would not "slow the progress of his skeletal disease" or result in any improvement.  [ERMO 340]

30.    In November 2001 and February 2002, Plaintiff sought pain management treatment with anesthesiologist Lawrence R. Miller, M.D.; in March 2003, Plaintiff sought chiropractic treatment with Michael Shepps, D.C.; and from March 2003 through September 2003, he sought physical therapy at the Joint Rehabilitation and Sports Medical Center. [ERMO 076, ERMO 250, ERMO 647, and ERMO 551]

31.    On or about March 25, 2003, Plaintiff received a Workers' Compensation award.  [ERMO 568-569]

32.    In April 2003, (subsequent to Plaintiff's having received LTD benefits for a 24-month period under the "regular occupation" definition of

1  disability), Prudential commenced paying Plaintiff further LTD benefits under

2  the "any occupation" definition of disability. [ERMO 018-019 and 406-407]

3      33.    On November 5, 2003, following further evaluation of Plaintiff's

4  claim, Prudential terminated Plaintiff's LTD benefits. [ERMO 021]  This

5  decision was based on the fact that Plaintiff's complaints of pain were self-

6  reported and there were no "objective data . . . provided that would validate

7  impairment precluding Claimant from returning to work, even at a minimal

8  sedentary level." [ERMO 021-023]

9      34.    Plaintiff appealed Prudential's termination of his LTD benefits on

10  November 14, 2003. [ERMO 430]

11      35.    A March 18, 2004 SOAP Note memorializes a claim file discussion

12  between Claims Manager Kimmurra Chadwick and Prudential's in-house

13  medical physician Dr. Fegan, in which Dr. Fegan indicated that Plaintiff's MRIs

14  of January 2003 showed a moderate to severe encroachment and herniation at

15  C4-5, "mild to moderate" findings at other levels, a disc protrusion at T8-9 that

16  was "not significant," and lumbar degenerative changes that were "mild at all

17  levels." [ERMO 079 and 392]

18      36.    During Ms. Chadwick's discussion with Dr. Fegan, he opined that

19  these findings did not preclude Plaintiff from returning to work at a sedentary

20  occupation. [ERMO 079]

21      37.    On March 18, 2004, Prudential's vocational rehabilitation

22  consultant, Thomas Virgilio, determined that Plaintiff had "general transferable

23  skills and residual functional capacity to perform given his current medical

24  status" and concluded that "the employee is expected to be reasonably

25  employable." [ERMO 082] He noted that Plaintiff could work at a sedentary

26  position "with the following restrictions: no repetitive, constant hand movement

27  and light keyboarding." [ERMO 082] Plaintiff's job description, as he

28  conveyed it to various doctors, was "supervising two word processors, three

1   night secretaries and the night shift word processing department," as well as

2   performing word processing himself. [ERMO 151]

3       38.    On March 29, 2004, Prudential denied Plaintiff's first appeal and

4   upheld its decision to terminate his LTD benefits based on the Company's

5   medical evaluation of Plaintiff's functionality and a vocational rehabilitation

6   assessment by Prudential's in-house vocational team. [ERMO 031-034]  As

7   with its prior decisions, Prudential communicated its rationale to plaintiff, giving

8   him the opportunity to present additional evidence to support his claim. [*Id.*]

9       39.    Prudential received Plaintiff's second appeal on or about April 15,

10  2005. [ERMO 049]

11      40.    A June 2, 2005, SOAP note memorialized a file review performed

12  by Philip Marion, M.D., who opined that Plaintiff's "complaints of pain and

13  functional limitation are out of proportion to his objective findings." [ERMO

14  085]  It also stated that Plaintiff "has well documented degenerative spine

15  disease manifested by cervical, thoracic and lumbar disc bulges.  However, there

16  is no significant herniated disc disease, spinal cord compression or nerve root

17  compression.  Motor exams have been consistently normal.  Electrodiagnostic

18  studies from 11/02 were normal." [ERMO 085]  The Note quoted Dr. Marion as

19  acknowledging that the employee's limitations "are not solely based on self-

20  reported symptoms as he has well documented evidence of degenerative spine

21  disease [. . . however] there is no objective evidence to support that the

22  employee is functionally impaired from performing full-time sedentary work

23  from 10/03 forward.  The employee's documented degenerative spine disease

24  would not preclude him from performing the routine duties of a sedentary job."

25  [ERMO 0085]

26      41.    On June 2, 2005, Prudential denied Plaintiff's second appeal of its

27  decision to terminate his LTD benefits based on Dr. Marion's peer review of the

28

file (delineated in Number 40, above) and his opinion that Plaintiff is capable of sedentary work under the "any occupation" definition of disability in the policy. [ERMO 056-058]

42.    Prudential's decisions to terminate Plaintiff's benefits and to deny his appeals were based on analyses and evaluations of the file and medical records submitted by Plaintiff's treating and consulting physicians by the following qualified medical professionals: Prudential's medical staff, including Susan Iannarelli, R.N., Nora Bargfrede, R.N., Dr. Fegan, vocational rehabilitation consultant Thomas Virgilio, physical therapist Kathleen Pattis; as well as an outside peer review by physical medicine and rehabilitation specialist Phillip Marion, M.D. [ERMO 065, ERMO 068, ERMO 074, ERMO 076, ERMO 079-80, ERMO 082, ]

43.    Subsequent to the filing of this lawsuit, the parties agreed that the proper standard of review for this matter is *de novo*.

## CONCLUSIONS OF LAW

### Prudential's Decision to Deny Plaintiff's Claim for Long Term Disability Benefits was Proper

1.    Plaintiff timely brought his claim under Section 1132 of ERISA, which allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . . ." 29 U.S.C. § 1132(a)(1)(B).

2.    In an ERISA lawsuit under the *de novo* standard of review, the plaintiff bears the burden of proving his or her entitlement to plan benefits by proving that he or she met the definition of total disability at the time of the termination of benefits. *See e.g., Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d

653, 658 (8th Cir. 1992); *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998); *see also Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 63 F.Supp.2d 1145, 1155 (C.D. Cal. 1999) (affirming that the plaintiff bears the burden of proving an entitlement to ERISA plan benefits and cannot shift the burden to the plan administrator to "disprove" an alleged disability).

3.     The courts in the Ninth Circuit have repeatedly found that when reviewing the termination of disability benefits under a *de novo* standard of review, the insured retains his or her burden of proving disability. *Gardner v. Bear Creek Corp.*, 2007 U.S. Dist. LEXIS 58615, *35-36 (N.D. Cal. 2007) (under a *de novo* review of a terminated disability claim, the court held that "Plaintiff must prove by a preponderance of evidence that she is disabled under the any occupation standard"); *Schwartz v. Metropolitan Life Ins. Co.*, 463 F. Supp. 2d 971, 982 (D. Ariz. 2006) ("Plaintiff has the burden of proof to show that he was eligible for continued long term disability benefits based on the terms and conditions of the ERISA plan"); *Perez v. Cozen & O'Connor Group Long Term Disability Coverage*, 2006 U.S. Dist. LEXIS 90356, *23 (S.D. Cal. 2006) (under a *de novo* review of a terminated disability claim, the insured has the burden of proving that she is disabled under the terms of the policy); *Wood v. Xerox Corp. Long-Term Disability Income Plan*, 2006 U.S. Dist. Lexis 68270, *11 (N.D. Cal. 2006) (same); *Neerdaels v. Group STD and LTD Plan for Employees of Akamai Technologies*, 2006 U.S. Dist. LEXIS 18552, *13 (N.D. Cal. 2006) (same).

In *Farretta v. Burr-Brown Corporate Disability Income Plan*, 2006 U.S. Dist. LEXIS 2668, *12-14 (D. Ariz. 2006), the court explained that there was no basis for shifting the burden of proof to the administrator when benefits are terminated:

46.   The Ninth Circuit has not addressed the issue of whether

the burden of proof shifts when a plan administrator decides to
terminate benefits after initially finding the recipient eligible for
benefits. . . . [¶] 47.  In a slip opinion, a District Court from the
Eastern District of California, recently held that ERISA does
not require that an administrator prove that a recipient's
condition has changed since it last approved a decision to
reward benefits. . . . *Reffkin v. New York Life Ins.*, 2005 U.S.
Dist. LEXIS 19732, 2005 WL 2086073 (E.D. Cal. August 29,
2005).  In *Refkin*, that court cited *Ellis v. Liberty Life Assurance
Co.*, 394 F.3d 262 (5th Cir. 2004) for a more thorough
discussion of this issue.  In *Ellis*, that court found: 'We have
found no statutory, regulatory, or jurisprudential authority . . .
that would heighten the level of proof needed for a plan
fiduciary to determine entitlement or non-entitlement to LTD
benefits simply because the fiduciary previously had approved
entitlement and paid benefits to the employee in question.' *Id.*
at 274.  The Fifth Circuit also specifically held that the plan
fiduciary is not required to obtain proof of a substantial change
in a recipient's medical condition after the initial determination
of eligibility. *Id.*  This Court, like the court in *Refkin*, is
persuaded by the reasoning set forth in *Ellis* and finds that the
burden of proof remains with Farretta to establish that he is
currently disabled under the Plan.

4.      The Administrative Record demonstrates that Plaintiff failed to
meet his burden of proving that he is entitled to benefits beyond November 2003
because there is no evidence that he met the definition of total disability under
the "any occupation" definition of disability in the Policy at the time of the
termination of Plaintiff's LTD benefits.

5.     The Administrative Record demonstrates that Prudential properly based its claim decisions in this matter on the entirety of the evidence, including consideration of the opinions of Plaintiff's treating and consulting physicians, the file reviews performed by qualified medical professionals, information from Plaintiff and his employer regarding his job duties, a vocational rehabilitation assessment, and workers' compensation medical-legal consultation reports. Prudential was required to, and did, consider all of the evidence of Plaintiff's condition.  However, Prudential was not required to give special weight to Plaintiff's treating physicians as discussed in Number 6, *infra*.

6.     The opinions of Plaintiff's treating physicians are not entitled to more weight than the opinions of other medical providers consulted by Prudential. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 123 S.Ct. 1965 (2003).  Pursuant to *Nord*, the "treating physician's rule" utilized in Social Security Administration cases does not apply to ERISA cases.  Though a claims administrator cannot arbitrarily reject relevant medical information, Plaintiff cannot argue that his treating physician's opinions should have been given undue deference.  Thus, Prudential appropriately considered Plaintiff's treating physicians' opinions, but also utilized an independent file review of the medical reports and records of Plaintiff's treating physicians, as well as a review of Plaintiff's workers' compensation AME.  The decision to deny Plaintiff's claim for LTD benefits was properly based on all the information in the Administrative Record, which includes the reports and opinions of Plaintiff's treating physicians, the Workers' Compensation evaluations, the opinions of Drs. Fegan and Marion, as well as the evaluations made by Prudential's own qualified medical professionals, including vocational rehabilitation consultant Thomas Virgilio, registered nurses Nora Bargfrede and Susan Iannarelli, and physical therapist Kathleen Pattis.

7.     The Administrative Record supports Prudential's decision to terminate Plaintiff's LTD benefits because Plaintiff's restrictions and limitations did not preclude him from performing the material and substantial duties of "any occupation" as defined in the Policy.  Thus, although there is evidence in the Administrative Record of Plaintiff's medical condition, the Administrative Record does not contain objective evidence that supports Plaintiff's claim that he is functionally impaired by his medical condition to such a degree that he cannot perform the substantial and material duties of any occupation as defined in the policy.

8.     In *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869 (9th Cir. 2003), the Ninth Circuit recognized that the critical issue is not the existence of a medical diagnosis.  Rather, the critical issue is whether the medical diagnosis results in a functional impairment that prevents a plaintiff from performing occupational duties as defined by the policy.  *Id.* at 880. Moreover, while a claim administrator may not require objective evidence to support certain medical diagnoses, it may require objective evidence to show that plaintiff's medical condition actually precludes him from performing work. *Id.* at 876-877.

Here, the information within the Administrative Record, as detailed above, establishes that while Plaintiff had subjective pain complaints, the objective medical findings did not support the extent of physical impairments that Plaintiff was alleging.

9.     The Administrative Record does not establish Plaintiff's inability to perform the material and substantial duties of "any occupation," but rather it supports Prudential's decision to terminate Plaintiff's benefits because Plaintiff could perform the duties of another job that is sedentary in nature.

10. Having applied de novo review of the entire administrative record, the court concludes that Plaintiff did not carry his burden of proving that he was entitled to disability benefits after November 5, 2003.

11. The Administrative Record supports the conclusion that the claim denial was proper and that Plaintiff is not entitled to additional benefits.

Dated: January 12, 2009
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP


By: _____
Adrienne Publicover
Russell Birner
Sherida Stroble

Attorneys for Defendant
MITCHELL, SILBERBERG & KNUPP LLP LONG TERM DISABILITY COVERAGE FOR ALL EMPLOYEES, an ERISA Plan

*The court has reviewed the findings of fact and conclusions of law and finds them supported by the evidence and order*

IT IS SO ORDERED

DATE 2·3·09

_____
U.S. DISTRICT COURT JUDGE