UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAMES ERMOVICK,

              Plaintiff,

vs.

MITCHELL, SILBERBERG &
KNUPP LLP LONG TERM
DISABILITY COVERAGE FOR
ALL EMPLOYEES, and ERISA Plan,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 2:05-cv-06018-JHN-VBKx

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

      This is an action for benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. brought by Plaintiff James Ermovick ("Plaintiff") against Defendant Mitchell, Silberberg & Knupp LLP Long Term Disability Coverage for All Employees, an ERISA Plan ("Defendant"). The Court held a court trial on the administrative record on August 5, 2010. At that time, the parties were in possession of the Court's written tentative ruling. The Court, having reviewed de novo the administrative record, and considered the pleadings and arguments by counsel, finds in favor of Defendant.

# I.

## PROCEDURAL HISTORY

On July 5, 2006, a court trial on the administrative record was held before Judge Manuel L. Real, who rendered judgment in favor of Defendant.  (Docket nos. 24–26.)  This ruling was reversed by the U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit") for failure to employ the de novo standard of review. *See Ermovick  v. Mitchell Silberberg*, 282 Fed. Appx. 623 (9th Cir. 2008).  On October 21, 2008, Judge Real conducted a second court trial and again found in favor of defendant.  (Docket nos. 52, 64–65.)  The Ninth Circuit again reversed and remanded the matter.  *See Ermovick  v. Mitchell Silberberg*, No. 09-55011, 2010 WL 1417916 (9th Cir. Apr. 8, 2010).  The case was reassigned to this Court on April 9, 2010.  (Docket No. 73.)  This Court allowed the parties to file supplemental briefing and held a court trial on the administrative record on August 5, 2010.

# II.

## FINDINGS OF FACT

"In bench trials, Fed. R. Civ. P. 52(a) requires a court to 'find the facts specially and state separately its conclusions of law thereon.'"  *Vance v. American Hawaii Cruises, Inc*., 789 F.2d 790, 792 (9th Cir. 1986) (quoting Fed. R. Civ. P. 52(a)).  "One purpose behind Rule 52(a) is to aid the appellate court's understanding of the basis of the trial court's decision.  This purpose is achieved if the district court's findings are sufficient to indicate the factual basis for its ultimate conclusions."  *Id*. (citation omitted).  Furthermore, the court "is not required to base its findings on each and every fact presented at trial."  *Id*. at 792.  The following constitutes the findings of fact required by Federal Rule of Civil Procedure 52, gleaned from the Administrative Record.  The Administrative Record in this matter consists of documents stamped "PRU-ERMO-1–679" ("PRU") and "PRU-CD-ERMO-1–45" ("CD").

**A.      The Long Term Disability Plan**

Plaintiff was employed by the law firm of Mitchell, Silberberg & Knupp, LLP ("Mitchell Silberberg") as a word processor.  Plaintiff's claims for long-term disability benefits  ("LTD") were submitted under a Group Contract of insurance issued by The Prudential Insurance Company of America ("Prudential") to Mitchell Silberberg.  (PRU 109–10; CD 1–46.)  The Policy provides for employee welfare plan benefits to be provided by Prudential under the provisions of ERISA. (CD 1–46.)  The Policy states, in relevant part:

> You are disabled when Prudential determines that:
>
> > • you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury;
> >
> > • you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury; and
> >
> > • you are under the regular care of a doctor.
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

(CD 10; emphasis omitted.)

**B.      Plaintiff's Initial Claim for LTD Benefits Based on Psychological Issues and Prudential's Denial of That Claim**

Plaintiff stopped working in early January 2001.  (PRU 657.)  On March 26, 2001, Plaintiff signed a Prudential Group Disability Insurance Employee Statement indicating that his last day of work was January 4, 2001, and his first date of treatment was January 5, 2001.  (PRU 109.)  Under the portion of the form that requested "where the accident occurred, or described the nature of your illness[,]" he stated "at work on 12/19/00—sexual harassment[.]"  (*Id*.)  This claim related to sexually disparaging comments made at a Christmas party based upon Plaintiff's sexual orientation.  (PRU 115.)

The Attending Physician's Statement, dated March 26, 2001, completed by psychologist Sean Pakdaman, Ph.D., Q.M.E., listed anxiety, depression, irritability

and sleeping problems due to being exposed to sexual harassment comments as the "illness and/or symptoms that caused Plaintiff to stop working[.]"  (PRU 131.) Plaintiff was also evaluated by psychiatrist Fereidoon Kharabi who noted his depressive state and referred him for further treatment.  (PRU 115–17.)  Plaintiff again reported to Dr. Kharabi that his symptoms started on December 19, 2001, when he was subjected to a sexual comment at a party by his co-workers.  (PRU 118.)  On March 29, 2001, Plaintiff was denied Workers' Compensation benefits based on a mental status examination ("MSE") performed by psychiatrist William J. Sullivan, M.D, Ph.D., which contrary to the other examinations found "no significant depression or anxiety."[1]  (PRU 157.)  Prudential denied Plaintiff's psychological LTD claim on May 22, 2001.  (PRU 636.)

**C.    Plaintiff's First Administrative Appeal and Prudential's Grant of LTD Benefits Based on Physical Injuries**

Plaintiff appealed the denial of his claim on October 15, 2001.  (PRU 633.) In his appeal, Plaintiff for the first time indicated that he was "unable to return to work in [his] present condition due to 'industrial injuries'" sustained to his neck and back.  (*Id.*)  Plaintiff had been receiving Social Security benefits since July of 2001.  The Notice of Award stated the date of disability as January 5, 2001.  (PRU 598.)  Prudential reviewed the materials provided by Plaintiff with his appeal, including an April 26, 2001 MRI, which identified a "disc bulge towards the spinal cord with impingement on the C5 nerve root bilaterally [and] disc bulges . . . identified at multiple other cervical and lumbar levels without other nerve root involvement[.]"  (PRU 65.)  Prudential also considered a June 19, 2001 comprehensive orthopedic consultation report by Gil Tepper, M.D., F.A.C.S., which made the following diagnosis:

---

[1]Plaintiff "reported low-level problems with arthritis, but takes natural herbs, which 'does [sic] wonders[]'" and "disclaimed long-term medical conditions" during this evaluation.  (PRU 150.)

1.  Chronic depression on an industrial basis, for which the patient is under the care of a psychologist. . .

2.  Industrially related exacerbation on previously existent degenerative disease[2] at C3–4 and C4–5 with myeloradiculopathy.

3.  Industrially related exacerbation of preexistent degenerative changes in the lumbosacral spine, L2–3 and L3–4, with mechanical back syndrome.

(PRU 660.)  Dr. Tepper concluded that Plaintiff was "*temporarily* totally disabled at the present time." (*Id*. at 661; emphasis added.)  In a parallel workmen's compensation insurance claim, John C. Chiu, M.D., a neurological surgeon, suggested "surgeries of provocative cervical and lumbar discogram followed by microdecompressive endoscopic cervical discectomy[.]" (PRU 652.)  The Plan granted Plaintiff disability benefits on February 5, 2002, retroactively to the date he left work, based upon his claim of cervical impairment.  (PRU 7–8.)

**D.    Plaintiff's Treatments Subsequent to the Initial LTD Award**

A July 15, 2002 Workers' Compensation Agreed Medical Examination Report (PRU 315–43) by orthopedist Bernard Cooperman, M.D., revealed that Dr. Chiu performed a minimally-invasive "discogram and microdecompressive lumbar diskectomy of Plaintiff's L2, L3 and L4 under magnification with laser thermodiskoplasty" on May 15, 2002.  (PRU 333.)  On May 29, 2002, Dr. Chiu performed a cervical discogram and microdecompressive endoscopic diskectomy of Plaintiff's C3, C4 and C6.  (PRU 334.)  On June 4, 2002, Plaintiff had trigger point injections to his sacroiliac joint and his bilateral trapezius.  (*Id*.)  Dr. Chiu's June 4, 2002 progress report stated that Plaintiff is "doing well and improving" and should "[r]emain off work until August 29, 2002." (PRU 335.)  Dr. Cooperman stated that "[a]s a combination of the neck and back complaints, there

---

[2]An August 15, 2001 report from John C. Chiu, M.D., who reviewed Plaintiff's medical records, indicated: "About 5-6 years ago the patient started experiencing increasing neck pain, mid back pain and low back pain which is often aggravated by his work duties."  (PRU 646.)

is a permanent disability precluding substantial work" and "with regard to the wrists, there is a permanent disability precluding heavy grasping and gripping[.]" (PRU 340.)  Dr. Cooperman ultimately concluded "It is my view that [Plaintiff] can go back to 32 hours a week from the orthopedic point of view."  (PRU 342.)

In April 2003 (subsequent to Plaintiff having received LTD benefits for a 24-month period under the "regular occupation" definition of disability), Prudential commenced paying Plaintiff further LTD benefits under the "any occupation" definition of disability.  (PRU 18–19; 406–07.)

**E.     Prudential's Termination of LTD Benefits**

On November 5, 2003, Prudential wrote to Plaintiff to inform him that he was no longer eligible to receive LTD benefits.  (PRU 21–23.)  Prudential wrote that Plaintiff "did not meet the definition for total disability" because "[a]lthough you may be experiencing symptoms of discomfort and may continue to receive treatment, your complaints of pain and loss of functional capacity are based on self-reports.  No objective data has been provided that would validate an impairment precluding you from returning to work, even at a minimal sedentary level."  (PRU 22.)  While the letter listed various complaints by the Plaintiff and dates during which he received some of his treatment, the letter did not list any medical data that may have informed Prudential's decision.

**F.     Plaintiff's Second Administrative Appeal**

Plaintiff appealed Prudential's termination of his LTD benefits on November 14, 2003.  (PRU 430.)  On March 29, 2004, based on a review by Prudential's in-house medical physician, Dr. Fegan, Prudential denied this appeal. Prudential noted that "[m]edical records in file include diagnostic test results and office visit notes from August 2001 to present[,]" and took issue with the following medical evidence submitted by Plaintiff:

> Your 2001 EMG report only includes Nerve Conduction Studies, yet
> a diagnoses of C6 bilateral C-7 radiculopathy, left S 1 radiculopathy
> and mild bilateral Carpal Tunnel Syndrome are noted.  A review of a

worksheet finds median sensorydistalatency slightly prolonged.  The F waive studies are controversial diagnosing radiculopathy and given the normal findings on the worksheet we are unsure how Dr. Clifford diagnosed an upper extremity radiculopathy[.]  The left H reflex was prolonged with regard to the right.  There is no evidence that a needle exam was performed, this could clarify whether a radiculopathy is present or not.  The F waive studies do not support a L5 radiculopathy[.]

* * *

Your January 6, 2003 Lumbar MRI shows degenerative changes in 2 millimeter . . . restrolesthesis at L2–3 and L3–4[.]  A disc Protrusion noted at L2–3.  L3–4 is 3 millimeters or less.  These findings are graded mild at all levels.

Your December 10, 2003 Isometric testing results show this test marks a diminish in performance such that percentage ranking could not be given.  As such a conclusion could not be made for this test.

Prudential concluded:

The above diagnostic studies show mild Carpal Tunnel Syndrome and degenerative changes in your neck and lower back.  However, these findings are not suggestive of a severe impairment which would preclude return to work to a sedentary occupation.  Reasonable restrictions and limitations related to your diagnosis of mild Carpal Tunnel Syndrome would include no constant repetitive hand movements and no frequent typing.  **Reasonable accommodations for your neck and back pain would include being able to alternate your position from sitting to standing as necessary.**

* * *

In order to determine your employability your claim was referred to our Vocational Team.  Our Vocational team reviewed your file and performed a transferable skills analysis and labor market survey.  Considering your restrictions and limitations and your prior work history and skill our Vocational team has identified several occupations for which you have general transferable skills and residual functional capacity to perform.

In order to determine the status of your local labor market, (4) occupations were selected to conduct the research.  Following are the median hourly wages (as of January 1, 2004) for the Los Angeles, CA labor market as reported by the Economic Research Institute (ERI).

- Office Supervisor, (sedentary) $23.88 per hour
- Customer Service, Supervisor. (Sedentary) $21.72 per hour
- Order Supervisor, (Sedentary) $22.79 per hour
- Correspondence Review Clerk, (Sedentary[)] $14.67 per hour[.]

(PRU 33–34; emphasis added.)

### G.  Plaintiff's Third and Final Administrative Appeal

Plaintiff again filed an administrative appeal.  A June 2, 2005 subjective, objective, assessment, and plan ("SOAP") note memorialized a file review performed by Philip Marion, M.D., who opined that Plaintiff's "complaints of pain and functional limitation are out of proportion to his objective findings." (PRU 85.)  It also stated that Plaintiff "has well documented degenerative spine disease manifested by cervical, thoracic and lumbar disc bulges.  However, there is no significant herniated disc disease, spinal cord compression or nerve root compression.  Motor exams have been consistently normal.  Electrodiagnostic studies from 11.02 were normal."  (PRU 85.)  According to Dr. Marion, Plaintiff's limitations were "not solely based on self-reported symptoms as he has well documented evidence of degenerative spine disease[,]" but that "[t]here is no objective evidence to support [that the employee] is functionally impaired from performing full-time [sedentary] work from 10/03 forward.  [The employee's] documented degenerative spine disease would not preclude him from performing the routine duties of a sedentary job."  (PRU 85.)  The following individuals from Prudential's medical staff reviewed Plaintiff's file in assisting Prudential in its decision to deny Plaintiff's appeals: Susan Iannarelli, R.N., Nora Bargfrede, R.N., Dr. Fegan, vocational rehabilitation consultant Thomas Virgilio, physical therapist Kathleen Pattis; as well as an outside peer review by physical medicine and rehabilitation specialist Dr. Marion.  (PRU 65, 68, 74, 76, 79–80, 82, 85.)

After this final denial, Plaintiff filed the instant federal lawsuit against defendant Mitchell Silberberg on August 17, 2005.  (Docket no. 1.)

### III.

### STANDARD OF REVIEW AND BURDEN OF PROOF

The parties have agreed, and the Ninth Circuit has instructed, that the de

novo standard of review applies in this matter.  The Supreme Court has established that a Court conducting de novo review does not give deference to either party's contentions and reviews the record before it afresh.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112–13 (1989); *see also Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 n.2 (9th Cir. 1999).  "[T]he District Court's 'de novo review of the parties' submissions and resolution thereof, can best be understood as essentially a bench trial 'on the papers' with the District Court acting as the finder of fact."  *Porco v. Prudential Ins. Co. of America*, 682 F. Supp. 2d 1057, 1071 (C.D. Cal. 2010) (quoting *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003)).  "In a trial on the record . . . the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true."  *Id*. at 1095.  However, "[i]n an ERISA case involving *de novo* review, the plaintiff has the burden of showing entitlement to benefits."  *Schramm v. CNA Financial Corp. Insured Group Benefits Prog.*, __F. Supp. 2d __, 2010 WL 2433126, at *10 (citing *Richards v. Hewlett-Packard Corp*., 592 F.3d 232, 239 (1st Cir. 2010); *Juliano v. Health Maint. Org. of N.J.*, 221 F.3d 279, 287–88 (2d Cir. 2000)) (other citations omitted).

The fact that an employer terminates benefits does not shift the burden to the employer.  *Porco*, 682 F. Supp. 2d at 1072 (citing *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 985 (6th Cir. 1991) ("Plaintiff implies that once disability benefits are conferred, the burden of proof lies with the insurance company to prove that the employee can return to her former regular employment.  However, under the terms of the Plan, it is the employee who must continue to supply on demand proof of continuing disability to the satisfaction of the insurance company")); *see also Muniz v. AMEC Const. Management*, No. CV-07-8066 CAS (AJWx), 2009 WL 866843, at *5 (C.D. Cal. Mar. 30, 2009) ("The parties dispute which party bears the burden of proof in this case.  Generally, a plaintiff suing for benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), must establish his entitlement

1    to benefits.  *See Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 658 (8th

2    Cir.1992); *see also Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038

3    (11th Cir.1998) (citing *Farley* ) ("[Plaintiff] attempts to argue that, as here, where

4    an insurer seeks to terminate disability benefits as opposed to refusing to award

5    them in the first  place, the burden of proof shifts to the defendant.  This is

6    unsupported by case law, as numerous courts, including several within this circuit,

7    have consistently held that the burden of proof remains with the plaintiff in just

8    such a case").

9                                    **IV.**

10                        **CONCLUSIONS OF LAW**

11   **A.  Whether Plaintiff was Totally Disabled**

12          The Court's independent review of the administrative record establishes that,

13   at the time Plaintiff's benefits were terminated, he was not totally disabled under

14   Prudential's plan definition.  While there is no question that Plaintiff suffered from

15   cervical and arthritic ailments, there is insufficient evidence in the record to show

16   that his condition would prevent him from performing his duties at Mitchell

17   Silberberg, with appropriate limitations.  In support of his position, Plaintiff cites a

18   November 27, 2002 letter from neurologist Dr. Robert Shorr which included the

19   following statement: "[t]he patient should be prophylactically precluded from

20   heavy grasping or gripping activities[.]"  (PRU 309.)  Dr. Shorr agreed with Dr.

21   Bernard Cooperman, who had examined Plaintiff earlier on July 15, 2002, that

22   Plaintiff "is precluded from substantial work."  (PRU 309.)  Plaintiff relies heavily

23   on Dr. Cooperman's evaluation that "[a]s a combination of the neck and back

24   complaints, there is a permanent disability precluding substantial work" and "with

25   regard to the wrists, there is a permanent disability precluding heavy grasping and

26   gripping[.]"  (PRU 340.)  However, Plaintiff ignores Dr. Cooperman's ultimate

27   conclusion in that same evaluation:

28          Patient tells me that he stopped working because of an interpersonal incident

**with a fellow worker.  At that time he was working 32 hours a week and able to handle it.  It is my view that [Plaintiff] can go back to 32 hours a week from the orthopedic point of view.**"

(PRU 342; emphasis added.)  Further, in Plaintiff's Memorandum of Contentions of Fact and Law, he claims that his chiropractor, Dr. Bahadori "wrote on October 19, 2001, that [Plaintiff] was totally disabled."  (Plf. Memo at 6.)  However, a review of that document reveals no such statement.  Dr. Bahadori simply stated under the heading "work status" that "[t]he patient remains on *temporary* total disability."  (PRU 631; emphasis added.)  Plaintiff also relies on a December 16, 2003 letter from Dr. Marc Darrow stating that "patient's condition is severely debilitating and will likely require long term treatment and likely prevent him from returning to work in even a part time capacity."  (PRU 371.)  However, in the very same letter, Dr. Darrow stated that Plaintiff's "low back pain and cervical spine pain are exacerbated with prolonged periods of standing and sitting.  This requires [Plaintiff] to have frequent alternating positions between standing and sitting approximately every 30 minutes or so."  (PRU 370.)  The statements by Dr. Darrow, viewed in context, does not suggest that Plaintiff is totally disabled such that no accommodation could alleviate his condition.  Prudential acknowledged in its September 2005 SOAP letter that Plaintiff "should be allowed to change positions as needed" (PRU 85) and its March 29, 2004 appeal denial stated that "[r]easonable accommodations for your neck and back pain would include being able to alternate your position from sitting to standing as necessary."  (PRU 33.)

While the record contains cautious statements from physicians indicating that Plaintiff faces long-term arthritic grasping difficulties, there is no indication that Plaintiff was permanently disabled in a manner that would prevent him from performing "any gainful occupation for which [he] is reasonably fitted by education, training or experience."  (PRU 007.)  Indeed, word processing was only one component of Plaintiff's job.  In his 2001 psychiatric evaluation, Plaintiff represented that his job duties "included supervising two operators, three night

secretaries, and the word processing department of the night shift.  He had to evaluate and oversee, as well as do word processing himself."  (PRU 151.)

Plaintiff also presented MRI and Isometric testing that amounted to raw data with no analysis as to whether they would affect Plaintiff's ability to work.  (PRU 378–90.)  The same was also the case for Plaintiff's diagnoses of C-6 bilateral C-7 radiculopathy.  The Ninth Circuit has recognized that merely because "a person has a true medical diagnosis . . . does not by itself establish disability."  *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004).  These particular reports do not contain information about how they would affect Plaintiff's ability to complete sedentary work with the restrictions proposed by Prudential.  Therefore, the Court accords more weight to the evaluations of the doctors who evaluated these medical tests and examined Plaintiff in order to determine whether or not he is able to work, with appropriate limitations.  In short, based on a de novo review of the entire record, the Court finds that Plaintiff has not met his burden of proving that he was permanently disabled under the Plan definition—that is, "unable to perform the duties of any gainful occupation for which [he was] reasonably fitted by education, training or experience."  (PRU-007.)

**B.     Whether Procedural Deficiencies Impact the Court's De Novo Review in This Case**

1.     *The Procedural Deficiencies Identified by the Ninth Circuit*

In its prior reversal, the Ninth Circuit addressed the district court's failure to completely examine the record.  In keeping with this mandate, this Court has reviewed the administrative record in its entirety.

In a footnote, the Ninth Circuit also noted that the district court failed to address the following *procedural* deficiencies on the part of Prudential:

> failure to address the fact that Prudential granted long term disability benefits and for no properly articulated reason terminated them seven months later; [] failure to address the apparent lack of a true interactive process between Prudential and Ermovick, *see Jebian v.*

*Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1104 (9th Cir. 2003); *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1464–65 (9th Cir. 1997); [] failure to consider that after Prudential terminated the benefits, it changed its rationale for so doing, *see Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 974 (9th Cir. 2006) (en banc)[.]

*Ermovick v. Mitchell Silberberg*, 282 Fed. Appx. 623, 623 n.1 (9th Cir. 2008). The cases cited in the above footnote all dealt with matters in which the abuse of discretion standard, rather than de novo standard, apply.

In *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1102 (9th Cir. 2003), Plaintiff Jebian appealed a denial of benefits. Under his Plan, Jebian's claim was "deemed to have been denied on review" if the Plan fails to respond within a certain time period, and it was not until after Jebian filed his complaint in district court that the Plan sent Jebian a final denial letter. The district court reviewed the Plan administrator's decision for abuse of discretion and granted summary judgment to the Plan. *Id.*

The Ninth Circuit warned that permitting this kind of scenario to pass for an interactive process "would allow claimants, who are entitled to sue once a claim had been 'deemed denied,' to be 'sandbagged' by a rationale the plan administrator adduces only after the suit has commenced." *Id.* at 1104. The Ninth Circuit concluded that "[d]eemed denials are not exercises of discretion. They are therefore undeserving of deference under *Firestone*, and a *de novo* standard of review applies." *Id.* at 1106. The Ninth Circuit noted that it was not deciding that Jebian was in fact entitled to benefits merely because the Plan violated ERISA, but rather directing the district court to use a "*de novo* standard of review to decide *whether* Jebian is entitled to benefits." *Id.* at 1106 n.6 (emphasis in original).

The *Jebian* case has very little application to the instant matter, since the Court here has already applied the de novo standard of review and has not given any deference to Prudential's decision to deny Plaintiff benefits.

*Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1464 (9th Cir. 1997)

- 13 -

involves a Plaintiff who filed suit challenging her Plan's denial of benefits for a severe dental injury.  The district court granted summary judgment in favor of the Plan.  *Id*. at 1462–63.  The Ninth Circuit criticized the plan's failure to request "needed information and offer[] a rational reason for its denial[.]"  *Id*. at 1464.  The Court, applying the abuse of discretion standard, held that "to deny the claim without explanation and without obtaining relevant information *is an abuse of discretion*."  *Id*. (emphasis added).

Again, the instant case is distinguishable from *Booton* in that Prudential's decision was not reviewed for abuse of discretion.

In *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 974 (9th Cir. 2006), the court addressed ERISA's requirement that "[a]n administrator must provide a plan participant with adequate notice of the reasons for denial, 29 U.S.C. § 1133(1), and must provide a "full and fair review" of the participant's claim[.]"  There, the Court examined an administrator's change in its explanation for denying benefits after the matter was already under way in district court.  The administrator, Alta, then dropped the following bombshell:

> Alta stated for the first time that it was denying coverage because there was insufficient evidence in the record that Dr. Abatie had remained totally disabled from the time he left work until his death, as required under the policy.  In particular, Alta questioned whether Dr. Abatie had remained totally disabled from September 1998 through April 2000—the time of his partial remission.

*Id*.  The Ninth Circuit was highly critical of Alta's maneuver and assessed its import in the context of the abuse of discretion standard:

> When an administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level, the administrator violates ERISA's procedures. . . Accordingly, an administrator that adds, in its final decision, a new reason for denial, a maneuver that has the effect of insulating the rationale from review, contravenes the purpose of ERISA.  **This procedural violation must be weighed by the district court in deciding whether Alta abused its discretion.**

*Id*. (emphasis added; internal citations, alterations, and quotation marks omitted).

The Ninth Circuit stated in *Abatie* that the remedy for "wholesale and flagrant violations of the procedural requirements of ERISA" is a shift from abuse of discretion to de novo review of the administrator's decision to deny benefits. *Id*. at 971.  The court, however, concluded that *Abatie* was not in this "rare class of cases" in which the administrator is entitled to no deference; instead, the court found it appropriate to simply analyze the procedural errors in the abuse of discretion context. *Id*. at 972.

Similar to *Jebian* and *Booton*, the discussion in *Abatie* regarding the abuse of discretion standard of review and how it may be affected by procedural violations does not have direct application to the present case.  The question that remains here, though, is whether the procedural deficiencies impact the Court's de novo review of Prudential's decision to deny Plaintiff benefits.

2.      *Lack of Ninth Circuit Authority Regarding Procedural Deficiencies in the Context of de novo Standard of Review*

The Court has been unable to find Ninth Circuit authority directly addressing the impact, if any, that procedural deficiencies may have on cases where the court conducts de novo review.  Plaintiff here cites *Niles v. American Airlines, Inc*., 269 Fed. Appx. 827, 833 (10th Cir. 2008), which held that "[a] showing that the administrator failed to follow ERISA procedures therefore provides a basis for reversal separate from that provided by de novo review of the merits of the claim." *Niles*, however, relied on a Seventh Circuit decision, *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774, 777 (7th Cir. 2003), which remanded for retroactive reinstatement of benefits where the plan administrator failed to follow full and fair review procedures *"under the deferential arbitrary and capricious standard*[.]"  (Emphasis added.)  The Fourth Circuit has established a rule based on its own authority that "[u]nder either standard of review—de novo or abuse of discretion—the administrator must comply with these procedural guidelines." *Hall v. Metropolitan Life Ins. Co.*, 259 Fed. Appx. 589, 593 (4th Cir.

2007) (citing *Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154, 158 & n. 3 (4th Cir. 1993)). The Sixth Circuit, on the other hand, has implied that an analysis of procedural deficiencies may not be necessary under de novo review when it affirmed a district court denial of benefits that 1) "'provided [Plaintiff] with a de novo review and concluded that the denial of benefits was correct[;]'" *Wilkins v. Baptist Healthcare System, Inc*., 150 F.3d 609, 613 (6th Cir. 1998), and 2) determined, therefore, that "'it is not appropriate to grant [Plaintiff's] other equitable relief on the basis of his claims of breach of fiduciary duty *and failure to provide a full and fair review*.'" *Id*. (emphasis added).

Although the Ninth Circuit has never squarely addressed the issue of whether failure to comply with procedural requirements can be an independent basis for reversal, *Abatie* suggests that the Ninth Circuit would follow the Sixth Circuit's view, since even in instances of "wholesale and flagrant violations of the procedural requirements of ERISA", the Court's remedy is to accord no deference to the Plan and review the record de novo.[3] *Abatie*, 458 F.3d at 971. In any event, to the extent that there were procedural deficiencies in this case, they do not come close to being "wholesale or egregious" such that the Court would have to decide whether reversal on that basis is warranted.

3. *Procedural Deficiencies Are Not Outcome Determinative In This Case*

As the Ninth Circuit has identified, there were procedural irregularities in this case. Prudential changed its rationale for denying Plaintiff's claim, initially stating that "complaints of pain and loss of functional capacity are based on self-

---

[3] If procedural deficiencies cause the record to be incomplete, the Court "may have to consider evidence outside the adminstrative record." *Abatie*, 458 F.3d at 972–73. In this case, neither party asked to submit any additional evidence for the Court's consideration. In any event, the deficiencies did not cause the record to be incomplete. As Plaintiff's counsel conceded during oral argument, Plantiff could have submitted additional documentation during the third administrative review—after Prudential detailed its reasons for denying Plaintiff benefits. Plaintiff failed to do so.

reports." (PRU 22.)  Later, after Plaintiff appealed, Prudential again denied benefits and conceded that Plaintiff's limitations were "not solely based on self-reported symptoms as he has well documented evidence of degenerative spine disease." (PRU 85.)  In addition, Prudential was also apparently unresponsive to Plaintiff's requests for additional information regarding what Prudential would require from Plaintiff in their review of his appeal.  *See, e.g.,* PRU 234 (letter requesting additional information to which Prudential did not respond).

However, although Plaintiff was initially given a reason for denial that Prudential later conceded was wrong, the Court views Prudential's conduct to be far less egregious than the administrator's last-minute explanation shift in *Abatie*. Plaintiff pointed out the error, and Prudential thereafter provided a full explanation in its denial of Plaintiff's Second Administrative Appeal.  (PRU 33–34.)  Plaintiff received the chance to appeal again, armed with this explanation.  In contrast, the Plaintiff in *Abatie* was sandbagged by the change in the basis of denial of benefits and never got an opportunity to respond.

Prudential's March 29, 2004 letter gave a detailed analysis of the ways in which Plaintiff's claim was medically insufficient to support a LTD claim, thereby ameliorating its prior response.  Plaintiff was then given an opportunity to send additional information to Prudential regarding his claim.  Plaintiff's own papers indicate that although he was not given specific guidance by Prudential concerning what was required of him, he sent multiple sets of x-ray reports, MRI reports, EMG reports—presumably all of the medical information available to him. (Plntf's Trial Memo at 10.)  Dr. Marion's letter indicates that Prudential received "the medical documentation that [Plaintiff] wished reviewed' and thoroughly reviewed the information provided by Plaintiff and still reached the conclusion that Plaintiff was not totally disabled under the "any gainful occupation" definition, as discussed *infra*.  (PRU 57.)  In short, the record does not indicate that any procedural failings on the part of Prudential deprived Plaintiff of the opportunity to

know the rationale for Prudential's denial and to respond with whatever medical documentation he believed supported his claim.

Finally, it has already been established that the abuse of discretion standard does not apply in the instant matter and that the Court shall grant no deference to Prudential's determination under de novo review.  *See Muniz*, 2009 WL 866843, at *5 n.4 (C.D. Cal. Mar. 30, 2009) ("The question in abuse of discretion cases is whether a plan had a sufficient justification for concluding a plaintiff was not disabled.  **Here, [in a de novo case] the question is whether the plaintiff *was disabled*.**") (emphasis added).  Despite Prudential's errors in handling this case, the Court's independent review of the record reveals that termination of benefits was the correct outcome.

## V.

## CONCLUSION

Based on its findings of fact and conclusions of law, the Court concludes that Prudential is **entitled to have judgment entered in its favor**.

**IT IS SO ORDERED.**

Dated: October 8, 2010

_____
Honorable Jacqueline H. Nguyen
UNITED STATES DISTRICT COURT